**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**PHILIP ALLEN; CARY BATTISHILL; AARON DAHL; MICHAEL DILICK; RODNEY EATON; FORREST ELDER; NAM KO; KAREN KYMAN; JAY MCKINNEY; DERYL PEOPLES; CHANCE SMITH; and DERRICK MAY,**

Plaintiffs,

v.

**LEGACY EXPLORATION, LLC; SUMMIT VENTURES INVESTMENTS, LLC; ANDREW BROCK GAUTREAUX; PHILLIP DANIEL PETERSON; and MARK ELLIOTT,**

Defendants.

§ § § § § § § § § § § § § § § § § § §

Civil Action No. **3:25-CV-2806-L**

**MEMORANDUM OPINION AND ORDER**

Before the court are Defendant Legacy Exploration, LLC and Phillip Peterson's Rule 12(b)(3) Motion to Dismiss (*Arbitration*), and in the Alternative, Rule 12(b)(6) Motion to Dismiss (*Failure to State a Claim*), filed November 10, 2025 (Doc. 17); Defendant Summit Ventures Investments, LLC and Mark Elliott's Rule 12(b)(3) Motion to Dismiss (*Arbitration*), and in the Alternative, Rule 12(b)(6) Motion to Dismiss (*Failure to State a Claim*), filed November 18, 2025 (Doc. 19); Defendant Andrew Brock Gautreaux's Rule 12(b)(3) Motion to Dismiss (*Arbitration*), and in the Alternative, Rule 12(b)(6) Motion to Dismiss (*Failure to State a Claim*), filed December 31, 2025 (Doc. 24); Plaintiff's Motion to Strike Andrew Gautreaux's Defective Response and Memorandum of Law, filed May 6, 2026 (Doc. 26); and Plaintiffs' Motion for Leave to File Amended Complaint, filed June 11, 2026 (Doc. 33) ("Motion for Leave"). After careful consideration of the motions, responses, replies, appendices, record, pleadings, and applicable law,

the court **grants** Plaintiffs' Motion for Leave (Doc. 33) and **denies without prejudice** the remaining motions (Docs. 17, 19, 24, 26).

## I. Background

This case arises from an alleged oil and gas investment scheme.[1] The twelve investors who filed this suit are Philip Allen, Cary Battishill, Aaron Dahl, Michael Dilick, Rodney Eaton, Forrest Elder, Nam Ko, Karen Kyman, Jay McKinney, Deryl Peoples, Chance Smith, and Derrick May (collectively, "Plaintiffs"). Plaintiffs bring this action against five Defendants: Legacy Exploration, LLC ("Legacy"), a Texas limited liability company involved in raising capital to finance the drilling and completion of oil and gas prospects; two Legacy executives—Chief Executive Officer Andrew Brock Gautreaux ("Mr. Gautreaux") and Chief Legal Officer Phillip Daniel Peterson ("Mr. Peterson"); Summit Ventures Investments, LLC ("Summit"), a Delaware limited liability company registered to do business in the State of Texas; and Mark Elliott ("Mr. Elliott"), a former investor at Legacy with whom Mr. Gautreaux allegedly formed Summit.

Plaintiffs' Original Complaint ("Complaint") alleges that, beginning in 2017, Legacy, Mr. Gautreaux, Mr. Peterson, and others misappropriated investor funds in connection with the sale of oil and gas joint ventures. The alleged misappropriations included, among other things, grossly inflating project costs, fabricating production estimates, and diverting investor funds for personal use. The Complaint asserts Defendants solicited investors from multiple states and lured them to invest in the offerings by way of Joint Venture Agreements ("JVA"s), using a combination of high-pressure tactics, deceptive sales pitches, and false and misleading offering materials.

[1] The background that follows is drawn from Plaintiffs' Original Complaint (Doc. 1), with all nonconclusory factual allegations "accepted as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On October 15, 2025, Plaintiffs filed suit against Defendants asserting claims for, *inter alia*, violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964 et seq.; securities fraud; breach of contract; breach of fiduciary duty; fraud; violations of the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code § 134.001 et seq.; and conspiracy. Plaintiffs demand a full and complete accounting of all funds received, held, and expended by Defendants in connection with Legacy, Summit, their joint ventures, and all related investment offerings. They seek actual, treble, and exemplary damages, and request appointment of a receiver. Plaintiffs seek prejudgment and postjudgment interest, as well as reasonable attorney's fees and costs.

On November 10, 2025, Legacy and Mr. Peterson filed a motion to dismiss under Rule 12(b)(3), arguing that this case should be dismissed in favor of arbitration. Alternatively, Legacy and Mr. Peterson argue that the action should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The remaining Defendants filed nearly identical motions. Because the remaining Defendants' motions are nearly identical to that filed by Legacy and Mr. Peterson, for purposes of its analysis, the court will cite only Legacy and Mr. Peterson's motion. In addition to filing a response opposing Defendants' motions (*see* Doc. 25), Plaintiffs have filed a Motion for Leave, seeking to amend the pleadings to cure any pleading deficiencies raised by Defendants and to omit Derrick May as a party.

## II. Legal Standard

The Federal Arbitration Act ("FAA") establishes national policies "favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferre*r, 552 U.S. 346, 349 (2008). The policy favoring arbitration is to make "arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citation

omitted). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Id.* The FAA provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party may bring a motion to compel arbitration under the FAA, and a court must direct parties to arbitration if it is "satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4.

"Enforcement of an arbitration agreement involves two analytical steps. The first step is contract formation—whether the parties entered into *any arbitration agreement at all*. The second step involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (original emphasis). Thus, "the only issue at the first step is whether there is any agreement to arbitrate any set of claims. Determining whether that agreement covers the claim at bar is the second step." *Id.* at 202. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal citation omitted).

"Because arbitration is simply a matter of contract between the parties, the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (cleaned up) (citations omitted). "That inquiry is governed by ordinary state-law contract principles." *Id.* (citation omitted). "Only at the second step of the analysis—determining the scope of the arbitration agreement—do courts apply the federal policy favoring arbitration and resolve ambiguities in favor of arbitration." *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014).

"Ordinarily both steps are questions for the court. But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 830 F.3d at 201 (cleaned up).

## III. Discussion

The initial dispute here implicates the first step under the Fifth Circuit's framework: is there a valid agreement to arbitrate. Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court to decide. *Kubala*, 830 F.3d at 202. The parties agree that Texas law applies. Under Texas law, the basic elements of a contract are: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012) (applying Texas law). Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). In addition, because the validity of the agreement is a matter of contract, at this stage, the strong federal policy favoring arbitration does not apply. *Klein*, 710 F.3d at 236.

Defendants Legacy and Mr. Peterson move to dismiss under Rule 12(b)(3), arguing that this case should be dismissed in favor of arbitration based on the agreements to arbitrate included in the JVAs each investor was required to sign. In support, they provide the Declaration of Andrew Gautreaux ("Gautreaux Declaration") to which he attaches the standardized JVA that provides "[t]he parties hereto shall resolve any dispute that may arise in connection with this Agreement through final and binding arbitration." *See* Mot., Ex. A (Gautreaux Decl. ¶ 4) (citing §11.5 of the JVA, Attach. B). In addition to identifying the governing arbitration clauses, Mr. Gautreaux explains Legacy's practice, namely, that Legacy would not accept investor funds for a Joint

Venture until the investor signed and returned the governing Application Documents, including the Execution Page for the JVA and the Application Agreement. *See id.*, Ex. A (Gautreaux Decl. ¶¶ 6-10). Mr. Gautreaux also attaches representative governing documents and an exemplar signed execution page. *See id.*, Ex. A (Gautreaux Decl. ¶¶ 3, 8-9, and Attachment E). With respect to three Plaintiffs (Aaron Dahl, Derrick May, and Chance Smith), however, Mr. Gautreaux states that he has no internal records showing they made an investment. *See id.*, Ex. A (Gautreaux Decl. ¶ 6).

In response, Plaintiffs argue that Defendants' Rule 12(b)(3) motion should be denied because they "failed to produce 'competent evidence showing the formation of an agreement to arbitrate.'" Pls.' Resp. Br. 7 (Doc. 25) (quoting *Gallagher v. Vokey*, 860 F. App'x 354, 357-58 (5th Cir. 2021)). Plaintiffs also note that "Defendants even take the position that at least three of the Plaintiffs (Dahl, May, and Smith) could not have had an agreement at all." *Id.*

In their reply brief, Defendants contend that because Aaron Dahl, Derrick May, and Chance Smith made no investment, they suffered "no investment loss-injury and should not be a part of this suit." Reply Br. 4 (Doc. 29).[2] Defendants, however, have not moved to dismiss these three Plaintiffs on this basis or any other basis.

[2] Attached to Legacy and Mr. Peterson's reply brief is the Supplemental Declaration of Mr. Gautreaux, who provides the "Execution Pages and Application Agreements" that Philip Allen, Cary Battishill, Michael Dilick, Forrest Elder, Nam Ko, Karen Kyman, Jay McKinney, and Deryl Peoples signed when each joined a particular joint venture. *See* Reply Br., Ex. A (Supp. Gautreaux Decl. ¶ 3 and Attachments A-G). While Defendants Legacy and Mr. Peterson did not attach a signature page for Rodney Eaton, they assert that in their "original Motion to Dismiss, [they] proved Mr. Eaton signed the pertinent materials by a preponderance of evidence." Reply Br. 4 n.1. They further assert that "if the Court wants additional proof, the proper remedy is a limited order requiring Mr. Eaton to deny signing the pertinent materials. If he denies signing, it is difficult to imagine how he can continue to pursue his claims, which are based on the investments he made by entering into those agreements." *Id.* The court disagrees with Defendants at this stage. It is incumbent on the moving party to convince the court whether an opposing party is required to arbitrate. At this juncture of the proceedings, the court **declines** Defendants' invitation to order Mr. Eaton to deny that he signed the pertinent materials.

The court determines that Legacy and Mr. Peterson have not met their burden at the first step of showing that Legacy entered into an arbitration agreement with respect to Messrs. Dahl, May, and Smith. Further, they have not challenged the standing of these three Plaintiffs by way of a Rule 12(b)(1) motion. This leaves the court and the parties with the prospect of potentially compelling arbitration as to only certain Plaintiffs and staying this matter with respect to others.

To avoid piecemeal litigation, allow the court to address whether to compel arbitration as to all Plaintiffs, preserve scarce judicial resources, and prevent it from being "penny-wise but pound foolish," the court now addresses Plaintiffs' Motion for Leave. Plaintiffs seek leave to file a First Amended Complaint "adding the facts the Defendants claim to be deficient [in their motions to dismiss] and modify[ing] the causes of action." Pls.' Motion Leave Amend 2. Notably, Plaintiffs do not include Derrick May as a Plaintiff in the proposed First Amended Complaint. The court assumes that, as stated in Mr. Gautreaux's Declaration, he made no investment. Plaintiffs, however, add heightened details regarding, among other things, the investments made by Plaintiffs Dahl and Smith. Specifically, Plaintiffs allege that Dahl and Smith invested in Ragin Cajun 2/3, and that Aaron Dahl also invested in the Alexa SWD. Proposed First Am. Compl. (Doc. No. 33-1), ¶ 98.

Defendants Legacy and Mr. Peterson oppose Plaintiffs' Motion for Leave, contending primarily that the proposed amendment "is futile because Plaintiffs' claims remain subject to binding arbitration." Defs.' Resp. Br. 6 (Doc. 35) (cleaned up). In addition, Legacy and Mr. Peterson contend that the proposed amended allegations fail to cure the pleading deficiencies they previously identified. *Id.* at 12-14. Defendants Summit, Mr. Elliott, and Mr. Gautreaux have not filed a response in opposition to Plaintiffs' Motion for Leave, and the court, therefore, treats Plaintiffs' Motion for Leave as unopposed with respect to these three Defendants.

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend a party's pleading "shall be freely given when justice so requires." The decision to allow amendment of a party's pleadings under Rule 15(a) is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

The court determines that, on balance, the factors set forth in *Foman* weigh in favor of allowing leave to amend in this matter. First, there is no evidence of delay or bad faith. Additionally, Plaintiffs have not previously amended their pleadings. Furthermore, when determining whether amendment imposes undue prejudice, courts consider whether the amendment would require the defendant to reopen discovery and prepare a defense for a claim different from the one that was previously before the court. *See Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004). No scheduling order is yet in place, and discovery has not even commenced. Further, when a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d

398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). Finally, for the reasons that follow, the court **rejects** Legacy and Mr. Peterson's contention that amendment would be futile.

First, the proposed First Amended Complaint now alleges that Plaintiffs Aaron Dahl and Chance Smith invested in Ragin Cajun 2/3, and Aaron Dahl in the Alexa SWD. Proposed First Am. Compl. (Doc. 33-1), ¶ 98. In addition, in the proposed First Amended Complaint, Derrick May is no longer named as a Plaintiff. Based on these more detailed allegations concerning Aaron Dahl's and Chance Smith's investments, and with Derrick May no longer named as a Plaintiff, Legacy may be able to seek to compel *all* Plaintiffs to arbitrate their claims, as, according to Mr. Gautreaux, Legacy would not accept investor funds for a Joint Venture until the investor signed and returned the governing Application Documents, including the Execution Page for the JVA and the Application Agreement. *See* Mot., Ex. A (Gautreaux Decl. ¶¶ 6-10).

Finally, in the event that a renewed motion to compel arbitration proves unsuccessful, Plaintiffs will already have had an opportunity to amend their pleadings to cure any deficiencies noted by Defendants in their alternative Rule 12(b)(6) motions to dismiss. Under the current circumstances, the court does not have adequate bases to conclude that amendment would be futile.

## IV. Conclusion

For these reasons, the court **grants** Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 33) and **denies without prejudice** all remaining motions (Docs. 17, 19, 24, 26). The court **directs** the clerk of court to docket Plaintiffs' First Amended Complaint (Doc. 33-1), attached as Exhibit 1 to Plaintiffs' Motion for Leave (Doc. 33). Defendants may file renewed motions to compel arbitration and, alternatively, to dismiss for failure to state a claim. The deadline

for Defendants to file these motions is thirty days from entry of this Memorandum Opinion and Order. In this manner, the court will be able to address whether all Plaintiffs agreed to arbitrate their claims, rather than unnecessarily expend scarce judicial resources to determine whether to compel arbitration in piecemeal fashion.

**It is so ordered** this 22nd day of September, 2026.

Sam A. Lindsay
United States District Judge